

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-14-00460-CR

———————————————

RUSSELL LAMAR ESTES, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1388628R

---

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Opinion on Remand by Justice Gabriel

**OPINION ON REMAND**

The court of criminal appeals has remanded this appeal for our specific consideration of (1) whether strict scrutiny applies to appellant Russell Lamar Estes's claim that the punishment enhancement for sexual-assault convictions involving bigamy violated equal protection as applied to him and (2) whether the sexual-assault punishment enhancement as applied to him violated his substantive due-process rights. *See Estes v. State*, 546 S.W.3d 691, 696–97, 706 & n.114 (Tex. Crim. App. 2018) (*Estes II*). We conclude that the answer to both questions is no.

## I. BACKGROUND

### A. THE OFFENSES AND CONVICTIONS

Over the course of one year, Estes repeatedly sexually assaulted his son's girlfriend Katie,[1] who was younger than seventeen at the time.[2] Katie eventually told her family about the assaults, leading to a police investigation. Estes was indicted with twenty-three sexual offenses, but was tried only for five counts of sexual assault and two counts of indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.011(a) (West Supp. 2018). At trial, the State admitted evidence showing that Estes was married at the time he sexually assaulted Katie. Katie's mother testified that she allowed Katie to spend so much time at her boyfriend's

---

[1]This is an alias. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7.

[2]Estes does not challenge the sufficiency of the evidence to support his convictions.

house, including sleeping over, because she knew and trusted Estes, she knew Estes's wife would also be present in the home, and Estes assured her that he would supervise his son and Katie. Katie's mother further stated that she believed Estes shared her moral code.

A jury found Estes guilty of each of the seven counts. In a special issue regarding the sexual-assault counts, the jury affirmatively found that Katie was a person whom Estes "was prohibited from marrying or purporting to marry or with whom [he] was prohibited from living under the appearance of being married as defined by the offense of bigamy."[3] This affirmative finding enhanced the available punishment range from that of a second-degree felony—two to twenty years' confinement—to that of a first-degree felony—five to ninety-nine years' or life confinement. *See id.* § 22.011(f); *see also id.* §§ 12.32–.33 (West 2011). After a punishment hearing, the jury assessed his sentences at twelve years' confinement for each sexual-assault conviction and at ten years' confinement for each indecency conviction. The trial court imposed concurrent, twelve-year sentences for the sexual-assault convictions and, as recommended by the jury, suspended imposition of the confinement terms assessed for the indecency convictions and placed Estes on community supervision for ten years.

---

[3]The court's special charge on this issue included a bigamy definition.

## B. THE APPEALS

Estes appealed and, as relevant here, argued that the punishment enhancement found in section 22.011(f) was unconstitutional as applied to him, violating the federal and state constitutional guarantees of equal protection and substantive due process.[4] We applied a rational-basis test to Estes's equal-protection claim and concluded that section 22.011(f) was unconstitutional as applied to him because it penalized Estes differently than a similarly situated defendant with no rational basis for the different treatment. *Estes v. State*, 487 S.W.3d 737, 750 (Tex. App.—Fort Worth 2016) (*Estes I*). But the court of criminal appeals concluded that section 22.011(f) was "rationally related to the compelling interest the State has in protecting children from sexual abuse" and exploitation and therefore did not violate Estes's right to equal protection under a rational-basis analysis. *Estes II*, 546 S.W.3d at 700. The court of criminal appeals reversed our *Estes I* judgment and remanded Estes's appeal to us to consider Estes's remaining constitutional issues: (1) whether a strict-scrutiny analysis applies to Estes's equal-protection claim and (2) whether section 22.011(f) violated Estes's substantive due-process rights.[5] *Id.* at 706 & n.114.

---

[4]Estes did not raise a facial challenge to section 22.011(f), only an as-applied challenge. In any event, a facial challenge would have been unavailing. *See State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013).

[5]Estes's indecency convictions were not at issue in the court of criminal appeals, and Estes does not urge us to reconsider our bases for affirming those convictions in *Estes I*. *See Carroll v. State*, 101 S.W.3d 454, 460–61 (Tex. Crim. App. 2003) (approving court of appeals' conclusion that trial court did not err even though court of criminal appeals had remanded only for reconsideration of harm); *cf. Sanders*

## II. EQUAL PROTECTION: STRICT SCRUTINY OR RATIONAL BASIS

The court of criminal appeals concluded that the enhanced punishment scheme as applied to Estes survived a rational-basis review and, therefore, did not violate Estes's rights to equal protection. *Estes II*, 546 S.W.3d at 699–702. We now must decide if a strict-scrutiny analysis applies to Estes's equal-protection claim and, if so, presumably determine if the enhanced punishment scheme found in section 22.011(f) meets that test.

Estes argues that section 22.011(f) impinges on his fundamental right to marry, mandating application of the strict-scrutiny test. The State concedes that marriage is a fundamental personal right, but asserts that section 22.011(f) is not subject to strict scrutiny because it does not "place a direct limit on entering marriage versus creating different consequences due to being married"—it does not significantly interfere with a fundamental right. Our issue, as succinctly stated by Judge David Newell, is whether "strict scrutiny appl[ies] because the distinction between married and unmarried offenders significantly interferes with the fundamental right to marry." *Estes II*, 546 S.W.3d at 715 (Newell, J., concurring and dissenting).[6]

---

*v. State*, 963 S.W.2d 184, 186 (Tex. App.—Corpus Christi 1998, pet. ref'd) (holding remand from court of criminal appeals to address "remaining" issues did not allow court to address issues appellant did not raise in original briefing). Thus, the portion of our prior judgment affirming the trial court's indecency judgments as to counts six and seven is unchanged.

[6]Judge Bert Richardson and Judge Barbara Hervey joined Judge Newell's dissenting and concurring opinion.

Under the strict-scrutiny test, a statutory classification will pass constitutional muster only if it is suitably tailored to serve a compelling state interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Schlittler v. State*, 488 S.W.3d 306, 316 (Tex. Crim. App. 2016). A statute is reviewed under this test if a classification interferes with a fundamental right or burdens an inherently suspect class.[7] *Cleburne*, 473 U.S. at 440; *Schlittler*, 488 S.W.3d at 316. But even fundamental rights are subject to reasonable regulations that do not significantly interfere with the assertion of that right. *See Zablocki v. Redhail*, 434 U.S. 374, 386–88 (1978). Therefore, only if a statute places a direct limit on a fundamental right such as marriage will strict scrutiny apply. *See id.*; *see also Califano v. Jobst*, 434 U.S. 47, 53–54 (1977) (concluding social-security-benefit rule that terminated benefits upon beneficiary's marriage not subject to strict scrutiny because rule did not "attempt to interfere with the individual's freedom to make a decision as important as marriage").

The right to marry is a fundamental personal right. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015). But the punishment-enhancement scheme found in section 22.011(f) does not directly limit or significantly interfere with that right. Although a sexual-assault defendant's marital status could subject him to a higher punishment range, we agree with Judge Newell that "[a]ny interference with the right to marry due to a statutory distinction between married and unmarried offenders is, at most, incidental, if not purely hypothetical." *Estes II*, 546 S.W.3d at 717.

---

[7]Estes does not contend that section 22.011(f) burdens a suspect class.

"A classification based on marital status is fundamentally different from a classification which determines who may lawfully enter into the marriage relationship." *Zablocki*, 434 U.S. 403–04. This case involves the former category. Certainly, the punishment enhancement did not directly limit or significantly interfere with Estes's right to marry. *See, e.g.*, *Califano*, 434 U.S. at 54 & n.11 (applying rational-basis test to social-security regulation based on marital status and noting "[t]his is not a case in which government seeks to foist orthodoxy on the unwilling by banning, or criminally prosecuting nonconforming marriages" but was Congress's recognition that "marriage traditionally brings changed responsibilities"); *Druker v. Comm'r of Internal Revenue*, 697 F.2d 46, 50–51 (2d Cir. 1982) (holding marriage-penalty tax had only indirect effect on right to marry); *Sturgell v. Creasy*, 640 F.2d 843, 853–54 (6th Cir. 1981) ("While appellants argue that the existing [welfare] program provides a disincentive for Paul Sturgell to remain at home with his family, this is not the type of direct and substantial interference with a family relationship which would trigger close judicial scrutiny."); *Schlittler*, 488 S.W.3d at 317 (holding any infringement on father's fundamental interest in care, custody, and management of his son by improper-contact statute was incidental and did not warrant strict scrutiny); *cf. Zablocki*, 434 U.S. at 387 (holding statute requiring court approval before person owing child support may marry "does interfere directly and substantially with the right to marry"). As such, strict scrutiny does not apply to an equal-protection review of section 22.011(f) as applied to Estes. And as the court of criminal appeals found in *Estes II*, section

22.011(f) does not violate equal protection under a rational-basis review.  546 S.W.3d at 700.

### III.  SUBSTANTIVE DUE PROCESS

Estes also argues that section 22.011(f) as applied to the circumstances of his case violates federal and state substantive due process.[8]  He bears the burden to show that this statute as applied to his circumstances violated substantive due process by interfering with his protected fundamental right to marry.  *See Schlittler*, 488 S.W.3d at 313–14.  Substantive due process provides protection against government interference with deeply rooted fundamental rights and liberty interests.  *Washington v. Glucksberg*, 521 U.S. 702, 719–21 (1997); *Schlittler*, 488 S.W.3d at 312–13.

As we recognized in our equal-protection discussion, the right to marry is a fundamental one.  But as we also discussed, the enhanced-punishment scheme triggered by Estes's marital status at the time of the offenses did not directly limit or substantially interfere with his right to marry.  Therefore, and as with Estes's equal-protection claim, strict scrutiny does not apply, and section 22.011(f) need only be rationally related to a legitimate state interest.  *See, e.g.*, *Schlittler*, 488 S.W.3d at 314–15; *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 343 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  As the court of criminal appeals held in *Estes II*, section 22.011(f) bears a rational relationship to a legitimate state interest.  546 S.W.3d at 699–702 (majority

---

[8]The due-process guarantees found in the United States and Texas Constitutions are coextensive; thus, we need not address each separately.  *See Salazar v. State*, 298 S.W.3d 273, 278 (Tex. App.—Fort Worth 2009, pet. ref'd).

op.). The court summarized that legitimate state interest as being founded on the protection of children from sexual offenses:

> [T]he Legislature could rationally conclude that to be a married man or woman is to project the kind of "stability" and "safe haven" that many children find comfort in. It could rationally conclude that one who has solemnly sworn to "forsak[e] all others" might be perceived, at least by some parents, as being less likely to make sexual advances upon their children. And it could rationally see fit to declare that one who would enjoy this marital perception of trustworthiness will be punished all the more severely if he uses it to groom, and then sexually abuse, a child.
>
> . . . We are simply unwilling, at least on this record, to discard as "irrational" the idea that marriage bestows upon its participants a certain aura of trustworthiness, specifically in regard to children. Nor do we think the Constitution precludes our Legislature from reserving, for deterrent purposes, a higher degree of punishment for those who would defile that trust by using it to sexually assault a child.

*Id.* at 701–02 (footnotes omitted). Indeed, Katie's mother testified that Estes's status as a married man informed her decision to allow her daughter to sleep over at his house.

For these reasons, we conclude that section 22.011(f), as applied to Estes and reviewed under the rational-basis test, did not violate his constitutional rights to substantive due process. *See, e.g.*, *Schlittler*, 488 S.W.3d at 315–16 (holding penal code section 38.111, which criminalizes incarcerated felon's improper contact with victim, did not violate substantive due process as applied to appellant's circumstances because statute "constitutes a rational exercise of governmental authority for the purpose of protecting sexual-assault victims and their family members from harassment"); *Doolittle v. State*, No. 03-16-00685-CR, 2017 WL 2729670, at *7 (Tex. App.—Austin

9

June 22, 2017, no pet.) (mem. op., not designated for publication) (holding sexual-offender-registration requirements did not offend due process because they are rationally related to governmental interest in protecting citizens from sexual offenders).

## IV.  CONCLUSION

Section 22.011(f) as applied to Estes is not subject to strict scrutiny because it did not directly limit or significantly interfere with his fundamental right to marry. Because this section is rationally related to a legitimate governmental interest, its application to Estes's punishment for sexual assault did not violate his rights to equal protection or substantive due process.  Accordingly, we affirm the trial court's sexual-assault judgments.  We again affirm the trial court's indecency judgments for the reasons stated in *Estes I*.  487 S.W.3d at 750–62.

/s/ Lee Gabriel

Lee Gabriel
Justice

Publish

Delivered:  December 13, 2018